ALBERT FEUER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Feuer v. Commissioner
Docket No. 11876-86.
United States Tax Court
T.C. Memo 1988-55; 1988 Tax Ct. Memo LEXIS 55; 55 T.C.M. (CCH) 110; T.C.M. (RIA) 88055; February 18, 1988. Albert Feuer, pro se. Diane R. Mirabito, for the respondent. PAJAK
MEMORANDUM FINDINGS OF FACT AND OPINION PAJAK, Special Trial Judge: This case is before the Court on petitioner's motion for litigation costs pursuant to Rule 231 and section 7430. [1]
The parties filed a Stipulation of Settled Issues on February 26, 1987. Petitioner, an attorney, filed his motion together with attached affidavits. Respondent filed a Notice of Objection. Petitioner filed a Second Affidavit in Support of a Motion For An Award of Reasonable Litigation Costs. FINDINGS OF FACT On March 4, 1985, the Brookhaven Service Center (Service Center) of the Internal Revenue Service (IRS) issued a preliminary notice *57 of proposed deficiency (often referred to as a "30-day letter") based on petitioner's failure to report $ 3,083 in taxable dividends and $ 507 in interest income. The 30-day letter stated that petitioner could explain his position by letter or request a conference with an examiner or an appeals officer. In March 1985, petitioner responded with a March 11, 1984 (sic) letter. Petitioner stated that the Service Center had made an error since he had reported $ 3,830 in dividends rather than the $ 3,380 shown in the 30-day letter, and that he had not received $ 480 of interest from a specific account. Petitioner also stated that he was confused by the dividend references. By an April 1, 1985 response card the IRS Miscellaneous Tax Processing Section advised petitioner that he would be contacted within 60 days (i.e., by May 31, 1985). Respondent failed to do so and petitioner took no action. The Service Center sent another response card, received by petitioner on August 28, 1985, which stated that there would be a response to petitioner's letter within 45 days (i.e., by October 12, 1985). Again respondent failed to respond to petitioner within the time period and again petitioner *58 took no action. On January 29, 1986, respondent mailed to petitioner a statutory notice of deficiency in which respondent determined a $ 1,255 deficiency in petitioner's Federal Income tax for the year 1982 based on the same items of unreported income proposed in the 30-day letter. The adjustments were as follows: Changed
Shown On
Reported by
Item(s)
Return
Payers
Increase (Decrease)
Taxable Dividends
$ 3,350
$ 6,433
$ 3,083
Interest
3,380
3,887
507
Total Increase
$ 3,590
In a February 3, 1986 letter, petitioner asserted that he was shocked to receive the notice of deficiency since he had been awaiting respondent's response to his earlier letter and had not waived his right to request a conference with an examiner. He also stated that he had just completed a careful view of his records and admitted that for 1982 he underreported $ 2,974 in dividend income since he reported the $ 926 distributed rather than the $ 3,900 credited to one account. Petitioner enclosed with his letter a check in the amount of $ 1,410 in payment of $ 1,040 in income tax owed in the $ 2,974 in unreported dividend income and $ 380 in payment of *59 interest. On March 18, 1986, respondent sent a letter modifying the notice of deficiency to reflect changes as a result of the information provided by petitioner. The revised adjustments were as follows: Changed
Shown on
Corrected
Adjustment
Item(s)
Return
Amount
Increase (Decrease)
Taxable Dividends
$ 3,350
$ 6,324
$ 2,974
Interest
3,830
4,309
[2] 479
Total Increase
$ 3,453
The March 18, 1986 letter modifying the notice of deficiency shows that the Bureau of Public Debt/United States Treasury Department had reported a total payment of $ 3,886 in interest to Treasury bond accounts bearing petitioner's social security identification number and petitioner's Bayside, New York address. Most of the accounts were in the name of Albert Feuer, one was in the name of Dr. Albert Feuer and one was in the name of Elias Feuer. The account in the name of Elias Feuer showed interest of $ 480. All the other accounts totaled $ 3,406 and petitioner had reported one dollar more, *60 $ 3,407, as interest income from the "U.S. Treasury". The $ 479 difference between the total of $ 3,886 and the $ 3,407 reported is the amount of unreported interest income set forth in the modification letter. The letter stated that petitioner would need verification from the Bureau of Public Debt in order to change respondent's determination as to the Treasury bills. Petitioner responded with his April 1, 1986 letter and an attached March 27, 1986 letter from the Bureau of the Public Debt. The Bureau of Public Debt letter stated that petitioner was paid $ 3,407.52 in interest in 1982 and also referred to his "brother's file in the event the IRS has further questions." In his April 1, 1986 letter petitioner stated he did not earn the $ 480 in question. We have found no explanation in this voluminous and repetitive record of who Elias Feuer was, why this account bore petitioner's social security number and address, and who actually earned the $ 480. Petitioner received an April 21, 1986 response card stating that the Service Center would respond within the next 45 days (June 5, 1986). On April 21, 1987, the Service Center erroneously issued an assessment of taxes for 1982, *61 in the modified amount, plus interest. Subsequently, respondent abated this assessment. By an April 21, 1986 letter, petitioner advised the Service Center that if the IRS did not withdraw its notice of deficiency by April 28, 1986, petitioner would have to petitioner this Court and request reasonable litigation costs. The petition in this case was filed timely. [3] Since petitioner had conceded the unreported dividend income of $ 2,974, he placed into dispute only the $ 168 of the deficiency attributable to the remaining item of unreported income of $ 479 in interest income. At the time the petition was filed, petitioner resided in Bayside, New York. On May 2, 1986, petitioner received an undated response card from the Service Center stating that he would receive a response to his letter within 45 days. On June 23, 1986, the Service Center's Examination Support Unit requested *62 a copy of petitioner's 1982 return. Petitioner furnished a copy of this return to respondent. On June 27, 1986, District Counsel filed an answer which admitted the amount in dispute was $ 168 and denied for lack of information the allegations concerning the $ 479 of interest income. On August 8, 1986, petitioner, in response to an Appeals Officer's request, sent him a copy of the United States Treasury March 27, 1986 letter which indicated petitioner was not paid the $ 480 of interest in question. Petitioner also requested abatement of the erroneous assessment for 1982. On August 27, 1986, the Appeals Officer conceded the interest income question and forwarded a proposed stipulated decision which showed a deficiency for 1982 in the amount of $ 1,039.20. [4] This is eighty cents less than the amount that petitioner, on February 3, 1986, had conceded was due on his unreported dividend income. *63 From September 2, 1986 to approximately February 26, 1987, petitioner and respondent disagreed as to the form of the stipulated decision documents, disagreed as to whether additional interest should be $ 2.50 rather than the $ 26.89 demanded by respondent (a difference of $ 1,69), and disagreed as to whether petitioner was entitled to litigation costs. On February 26, 1987, the parties filed a Stipulation of Settled Issues. Among other things, in the stipulation petitioner conceded that he had received the taxable dividends of $ 3,900, respondent conceded that petitioner did not receive taxable interest income of $ 480, and respondent conceded receiving payments of $ 1,420 and $ 25.20 with respect to petitioner's 1982 income tax liability and associated interest. Petitioner is an attorney who represented himself. Petitioner seeks an award of litigation costs of $ 5,314.19, which includes the time that he claims he spent working on his case and disbursements of $ 125.19. OPINION Generally a taxpayer may be awarded reasonable litigation costs in a civil tax proceeding if he is the prevailing party as defined in section 7430. Sec. 7430(a). To qualify as such, the taxpayer *64 must (1) establish that the position of the United States in the civil proceeding was not substantially justified; (2) have substantially prevailed in the litigation; and (3) have a net worth which does not exceed $ 2,000.00. Sec. 7430(c)(2)(A). Further, litigation costs shall not be awarded unless the prevailing party has exhausted his administrative remedies. Sec. 7430(b)(1). No award for reasonable litigation costs may be made with respect to any portion of the civil proceeding during which the prevailing party has unreasonably protracted such proceeding. Sec. 7430(b)(4). All of these conjunctive requirements must be met for an award to be made. ; see also . In this case we will first determine whether respondent's position was "substantially justified." Both this Court and the Second Circuit have stated that the "substantially justified" standard under the Equal Access To Justice Act is essentially one of "reasonableness." ; . *65 Since an appeal in the instant case would lie to the Second Circuit Court of Appeals, we will continue to interpret "substantially justified" to mean "reasonable." See , affd. . Further, in 1986 Congress added Section 7430(c)(4) to provide that the term "position of the United States" includes: (A) the position taken by the United States in the civil proceeding, and (B) any administrative action or inaction by the District Counsel of the Internal Revenue Service (and all subsequent administrative action or inaction) upon which such proceeding is based. [Sec. 1551, Pub. L. 99-514, 100 Stat. 2752. Emphasis added.]
Under this statute, this Court's application of the substantially justified standard to administrative actions or inactions prior to the institution of a proceeding is limited to the period beginning with the point at which District Counsel has become involved. In this case, petitioner has not established that the position of the United States was not substantially justified. We cannot consider any of respondent's *66 prelitigation actions or inactions since District Counsel first became involved in this case in the course of answering the petition. In the answer respondent denied allegations pertaining to the disputed interest income because respondent was unable to obtain the administrative file before the answer was due. The case was then assigned to an Appeals Officer who asked petitioner for a copy of the March 27, 1986 United States Treasury letter. Petitioner sent him a copy of the letter on August 8, 1986 and before the end of the month respondent, through the Appeals Officer, expeditiously conceded the interest income question by sending petitioner a stipulated decision document on August 27, 1986, showing the correct liability. Since petitioner disputed what we view as an adequate stipulated decision document, disputed an $ 1.69 interest item and pressed for a concession of litigation costs, the parties continued their negotiations until the Stipulation of Settled Issues was filed on February 26, 1987. Under these circumstances we conclude that respondent acted reasonably. Whether this matter could have been resolved administratively before the statutory notice was issued is irrelevant. *67 What is relevant is that respondent settled the issue promptly upon receipt of information from petitioner during the course of the proceedings before this Court. Since we have held that petitioner has failed to establish that the position of the United States was not substantially justified, we need not determine the other grounds under section 7430 which would preclude an award of litigation costs, including whether this petitioner, as an attorney appearing pro se, was entitled to be compensated for the value of services rendered on his own behalf. (See (pro se petitioner/attorney not allowed to recover fees under section 7430 for the value of his services)). To reflect the foregoing, An appropriate order will be issued and decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the taxable year in question, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. This amount appears in the record as either $ 479 or $ 480. Since we consider the difference de minimus, we will use the amounts as they appear in the record. ↩
3. A case is commenced in this Court when a petition is filed. Rule 20(a). Since this case was commenced after December 31, 1985, the provisions of the Tax Reform Act of 1986 which modify section 7430 are applicable. See section 1551, Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 1752. ↩
4. Petitioner's exhibit 19, the proposed stipulated decision sent to him on August 27, 1986, includes an August 20, 1986 Audit Statement which shows that the 1982 deficiency did not take into account petitioner's payment of $ 1,042 on February 10, 1986. However, petitioner's exhibit 21 would appear to indicate he did not receive the Audit Statement until September 8, 1986. We see no need to resolve the conflict in petitioner's exhibits since we do not deem this material. ↩